UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WENDY LEE FARNSWORTH

                      Plaintiff,

     v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                      Defendant.

**REPORT
and
RECOMMENDATION**

**16-CV-00381V(F)**

_____

APPEARANCES:          LAW OFFICES OF LEWIS L. SCHWARTZ
                                  Attorneys for Plaintiff
                                  LEWIS L. SCHWARTZ, of Counsel
                                  1231 Delaware Avenue
                                  Suite 103
                                  Buffalo, New York 14209

                                  JAMES P. KENNEDY, JR.
                                  UNITED STATES ATTORNEY
                                  Attorney for Defendant
                                  SERGEI ADEN
                                  Assistant United States Attorney, of Counsel
                                  Federal Centre
                                  138 Delaware Avenue
                                  Buffalo, New York 14202, and

                                  STEPHEN P. CONTE
                                  Regional Chief Counsel
                                  United States Social Security Administration
                                  Office of the General Counsel, of Counsel
                                  26 Federal Plaza
                                  Room 3904
                                  New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

The matter is presently before the court on motions for judgment on the pleadings, filed on November 28, 2016, by Plaintiff (Dkt. No. 8), and on January 25, 2017, by Defendant (Dkt. No. 10).

## BACKGROUND

Plaintiff Wendy Farnsworth ("Plaintiff"), seeks review of Defendant's decision denying him Disability Insurance benefits and Supplemental Security Income ("SSI") ("disability benefits"), under Title II and Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's applications for disability benefits, Defendant determined that Plaintiff had a severe impairment of vertebrogenic (vertebral column) disorder, bilateral hearing loss and migraine headaches, that Plaintiff's dry eyes and anxiety were not severe impairments, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 11-21).[2] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform work at a sedentary level of exertion with limitations to no work around loud noises, only work that requires face-to-face communication, and no work dealing with obstreperous clients because of her hearing problem. (R. 16). As such, Plaintiff was found not disabled, as defined in the Act, at any time from Plaintiff's alleged onset date of April 3, 2012, through the date of the Administrative Law Judge's decision on February 25, 2015.

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on January 9, 2013 (R. 386-92), that was initially denied by Defendant on March 15, 2013.  On June 6, 2012, Plaintiff, represented by Felice Brodsky, Esq. ("Brodsky") appeared and testified at a hearing before  Administrative Law Judge Nancy Pasiecznik ("Judge Pasiecznik" or "the ALJ"), along with vocational expert ("VE") David Festa ("Festa" or "the VE") in Buffalo, New York.  (R. 28-70).  On October 24, 2014, Plaintiff, represented by Brodsky appeared and testified at a second hearing before ALJ Donald T. McDougall ("Judge McDougall" or ("the ALJ") and VE Joe Pierson ("Pierson" or "VE Pierson").  (R. 71-100).[3]  The ALJ's decision denying Plaintiff's claim was rendered on October 23, 2014.  (R. 23-34). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on March 31, 2016.  (R. 1-4).  This action followed on May 13, 2016, with Plaintiff alleging that the ALJ erred by failing to find her disabled.  (Dkt. No. 1).

On, November 28, 2016, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 8) ("Plaintiff's Memorandum").  Defendant filed on January 25, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 10) ("Defendant's Memorandum").  Plaintiff filed a reply to Defendant's motion on the pleadings on February 23, 2017 ("Plaintiff's Reply Memorandum") (Dkt. No. 13).

---

[3] The record indicates that Judge McDougall replaced retiring Judge Pasiecznik and ordered Plaintiff's second hearing.

3

Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion for judgment on the pleadings is DENIED; Defendant's motion for judgment on the pleadings is GRANTED.

## **FACTS[4]**

Prior to Plaintiff's alleged onset date of disability of April 3, 2012, on December 23, 2010, Plaintiff was involved in a car accident and was diagnosed with whiplash to the neck and lower back.  (R. 647).  On February 11, 2011, Gurmeet Dhillon, M.D. ("Dr. Dhillon"), a radiologist, reviewed a magnetic resonance imaging ("MRI") scan of Plaintiff's lumbar spine that showed disc herniation at Plaintiff's L5-S1[5] disc space, annular (exterior of spinal disc) tears at Plaintiff's L2-L3[6] disc spaces with no cauda equine (spinal nerve root) compression.  (R. 550).  On July 31, 2011, Donna Miller, D.O. ("Dr. Miller"), completed a consultative physical examination on Plaintiff and evaluated Plaintiff with moderate to severe limitations to heavy lifting, bending, and carrying, and opined that Plaintiff should avoid extreme noise.  (R. 668).

Relevant to the period of disability review in this case, on May 14, 2012, Plaintiff underwent anterior and posterior L5-S1 disc fusion surgery.  (R. 636).  On May 22, 2012, William Capicotto, M.D. ("Dr. Capicotto") completed a follow-up examination on Plaintiff who reported a rash near the area of her recent surgery.  (R. 636).  Upon examination, Dr. Capicotto evaluated Plaintiff with lumbar range of motion ("ROM") of 5

---

[4] Taken from the pleadings and the administrative record.
[5] L5 refers to a numbered segment in an individual's lumbar spine. S1 refers to a numbered segment in an individual's sacroiliac joint.
[6] L2 and L3 refer to numbered segments in an individual's lumbar spine.

4

degrees upon extension,[7] and 80 degrees upon forward flexion,[8] well-balanced and normal gait, normal lower extremity strength, full hip ROM (R. 638-39), and noted that Plaintiff's disability status was total and temporary. (R. 639). Dr. Capicotto completed medication reviews on Plaintiff on November 15, 2012 (R. 746), September 13, 2012 (R. 753), and February 5, 2014 (R. 875), and evaluated Plaintiff with normal strength and ROM of the lower extremities, normal straight leg raising test results measured at 90 degrees,[9] lumbar ROM measured at 5 degrees upon extension and 80 degrees upon forward flexion, and evaluated Plaintiff with a total, temporary disability on January 15, 2013 (R. 739), March 14, 2013 (R. 733), May 14, 2013 (R. 731), and November 5, 2013 (R. 877).

On December 16, 2012, Plaintiff was admitted to Millard Suburban Hospital for diarrhea and abdominal cramping (R. 688), and upon discharge was diagnosed with diarrhea and gastroenteritis. (R. 694).

On April 9, 2014, Dr. Capicotto noted that Plaintiff reported an achy pain in her lower back aggravated by bending, lifting, twisting, and turning. (R. 869). Plaintiff exhibited full ROM of her lower extremities, and Plaintiff's straight leg raising tests showed normal results. (R. 872).

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

---

[7] Normal lumbar extension is 25 degrees.
[8] Normal lumbar flexion is 60 degrees.
[9] A straight leg raising test uses an individual's ability to raise legs to diagnose a herniated disc. Positive results measure between 30 and 70 degrees.

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

### A.     Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating

6

physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[10] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an

---

[10] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[11]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g),

---

[11] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.  *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.**     **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since April 3, 2012, the alleged onset date of disability.  (R. 13).  Plaintiff does not contest this finding.

**C.**     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities."  If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting,

9

pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

In this case, the ALJ determined that Plaintiff suffered from the severe impairments of vertebrogenic (disorder of vertebrae), bilateral hearing loss and migraine headaches, and that Plaintiff's dry eye condition and anxiety were not severe impairments under 20 C.F.R. § 404.1520(c).  (R. 13-15).  Plaintiff does not contest the ALJ's step two findings.

### D.  Listing of Impairments

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§ 1.04") (Disorders of the spine), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 2.04 ("§ 2.04") (Loss of Visual Efficiency), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 2.10

("§ 2.10") (Hearing loss not treated with cochlear implant), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06") (Anxiety related disorders).  (R. 15).  Plaintiff alleges that the ALJ's finding that Plaintiff was not disabled is without the support of substantial evidence in the record because the ALJ violated the treating physician's rule with regard to the opinion of Dr. Capicotto (Plaintiff's disability status was total and temporary) (R. 872), and Dr. Mechtler (Plaintiff was 100 percent disabled) (R. 846).  Plaintiff's Memorandum at 15-19.  In particular, Plaintiff contends that the ALJ's determination to assign "little" weight to Dr. Capicotto's opinion is error as such opinion was consistent with Dr. Capicotto's clinical findings between January 26, 2012 and April 9, 2014 (R. 629-58, 728-44, 746-69, 869-88), and the results from Plaintiff's lumbar MRI completed on February 11, 2011 (R. 550), and Plaintiff's cervical MRI completed on July 6, 2011.  (R. 551).  Plaintiff's Memorandum at 17.  Defendant maintains that the ALJ properly weighed the evidence in the record, and that the conclusory treating physician opinions on Plaintiff's disability status were not entitled to significant weight.  Defendant's Memorandum at 17.  Defendant is correct.  Conclusory statements concerning disability made by treating physicians do not constitute a "medical opinion," 20 C.F.R. § 404.1527(e); *Earl-Buck v. Barnhart*, 414 F. Supp.2d 288, 293 (W.D.N.Y. 2006) (physician opinion that claimant is totally disabled is not a medical opinion under 20 C.F.R. § 404.1527(a)(2)).  The ALJ was therefore not required to rely on the opinions of Drs. Capicotta and Mechtler as related to Plaintiff's ultimate status of disability.  Plaintiff's motion on this issue should be denied.

11

### E. Residual functional capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

Plaintiff contends that the ALJ's residual functional capacity assessment of Plaintiff is erroneous because the ALJ erred by failing to complete a function-by-function analysis of Plaintiff's exertional and postural limitations to account for Dr. Miller's finding that Plaintiff had moderate to severe limitations for bending. (R. 668). Plaintiff's Memorandum at 23-24. Defendant maintains that the ALJ's residual functional capacity

assessment of Plaintiff was based on the entire record and included specific findings on functional areas that included sitting, standing, walking, lifting, carrying, changing positions, hearing noises, exposure to noise, bending, twisting, and effects from Plaintiff's headaches.  Defendant's Memorandum at 24-25.

Plaintiff's contention that the ALJ failed to account for Dr. Miller's findings on Plaintiff's ability to bend, Plaintiff's Memorandum at 24, is without support of evidence in the record.  The treating physician's rule requires ALJs grant treating physician opinions "controlling weight" where the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(4), yet in instances such as here, where the claimant's treating physicians do not provide specific function-by-function assessments of the claimant's residual functional capacity, and the medical record is extensive enough to support an informed residual functional capacity finding by the ALJ, remand is not appropriate.  *Tankisi v. Commissioner of Social* Security, 521 F. App'x. 29, 34 (2d Cir. 2013) (citing *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).  In this case, the ALJ specified that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p [as well as] opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p."  (R. 16). Upon reviewing Dr. Miller's evaluation of Plaintiff, the ALJ determined that "although Dr. Miller found the [Plaintiff] had moderate to severe limitations for heavy lifting, bending

and carrying, [Dr. Miller] also noted the [Plaintiff] was only two months post surgery."
(R. 18). Contrary to Plaintiff's assertion otherwise, the ALJ's residual functional capacity assessment of Plaintiff included consideration of Dr. Miller's findings on Plaintiff's ability to bend, *see* R. 18 (referencing Dr. Miller's consultative evaluation of Plaintiff on July 31, 2012 at R. 664-68). Therefore, Plaintiff's contention on this issue is without merit.

Plaintiff further contends that the ALJ erred in evaluating Plaintiff's past relevant work. In particular, Plaintiff contends that the ALJ erred in not classifying Plaintiff's work as a secretary as a "composite" job, a classification supported by the testimony of two VE's that classified Plaintiff's past relevant work under separate job classifications, namely, clerical worker and secretary. Plaintiff's Memorandum at 27-28. Defendant maintains that the ALJ correctly identified Plaintiff's past relevant work as a secretary and that such a classification necessarily included components of the clerical job identified by the VE during Plaintiff's first administrative hearing. Defendant's Memorandum at 28-29 (referencing R. 87). In this case, the ALJ relied on testimony proffered by the VE during the administrative hearing on October 24, 2014, finding jobs that Plaintiff was capable of performing as generally performed in the national economy. *See Haskins v. Commissioner of Social Security,* 2008 WL 5113781, at *16 (N.D.N.Y. Nov. 25, 2008) (harmless error where ALJ relied on VE's erroneous classification of jobs yet found claimant capable of performing other jobs with a significant number of jobs available in the national and regional economies). Plaintiff's contention on this issue is without merit.

In instances where nonexertional limitations diminish a claimant's ability to perform the full range of "light" work, the ALJ should solicit testimony from a vocational

14

expert regarding the availability of jobs in the national and regional economies suitable for employment of an individual with exertional and nonexertional limitations similar in nature to the claimant's.  *Bapp v. Bowen*, 802 F.2d 606, 501 (2d Cir. 1986).  Following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence, *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989), and "[i]f a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Lawler v. Astrue*, 2013 WL 656740, at *3 (2d Cir. February 25, 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting, *Bapp,* 802 F.2d at 605))*.*

　　　　During the administrative hearing on October 24, 2014,the ALJ posed a hypothetical situation to the VE that included limitations particular to Plaintiff, including work at a sedentary level of exertion, no loud noises, face-to-face communication, or more than occasional work with the general public, frequent contact with co-workers or supervisors, and no interaction with difficult or obstreperous clients because of hearing problems (R. 16), limitations which the VE opined would preclude Plaintiff from performing Plaintiff's past relevant work as a secretary.  (R. 85).  Upon further questioning by the ALJ, the VE opined that Plaintiff's skills as a secretary would be transferable to other sedentary jobs that include bill sorter, a semi-skilled job at the sedentary level of exertion, with 48,231 jobs in the national economy and 191 jobs available in the Buffalo-Niagara region (R. 87), and secretary, a sedentary job with 529,702 jobs available in the national economy and 2,775 jobs available in the Buffalo-Niagara region, with available jobs reduced by half to account for Plaintiff's limitation in interacting with obstreperous individuals.  (R. 88).

Plaintiff contends that the VE erred by not providing a more detailed explanation for the VE's finding that the number of secretarial jobs available (529,702 in the national economy), would be reduced by half to account for Plaintiff's limitation in dealing with obstreperous individuals.  Plaintiff's Memorandum at 25.  The Commissioner satisfies the burden of demonstrating that work exists in the national economy by demonstrating that "significant numbers either in the region where [the claimant] lives or in several regions of the country" exist.  42 U.S.C. § 423(d)(2)(A).  In this case, the VE reduced the number of secretarial jobs available by 50 percent to account for jobs that may involve interacting with difficult individuals.  (R. 88).  The ALJ inquired whether the VE's testimony was consistent with the DOT, to which the VE replied that although the DOT did not provide specific guidance on dealing with difficult individuals, the VE relied on the VE's experience and knowledge of the secretarial position to supplement the DOT.  (R. 88-89).  The ALJ's finding that half of the 529,702 secretarial jobs available in the national economy (264,851 jobs) would be available to Plaintiff (taking Plaintiff's limitation to interacting with obstreperous individuals into account) supports the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff is capable of performing.  *See Barney v.* Astrue, 2008 WL 4384456, at *4 (W.D.N.Y. Sept. 22, 2008) (174,000 job positions available on a national basis satisfies the ALJ's requirement to establish that a significant number of jobs exist).  As Defendant correctly maintains, a sufficient number of secretarial jobs exist as available to Plaintiff even when the nationally available number of jobs are reduced in half to accommodate Plaintiff's limitation in no exposure to obstreperous individuals.  Defendant's Memorandum at 27.  The ALJ therefore properly submitted all of Plaintiff's limitations to

the VE, the VE relied on such limitations in offering his opinion regarding the number of jobs available to Plaintiff, and Plaintiff's motion on this issue should be denied.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 7) should be DENIED; Defendant's motion (Doc. No. 9) should be GRANTED. The Clerk of the Court should be instructed to close the file.

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	June 4, 2018
	Buffalo, New York

17

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

                                              */s/ Leslie G. Foschio*

                                        LESLIE G. FOSCHIO
                                UNITED STATES MAGISTRATE JUDGE

DATED:    June 4, 2018
               Buffalo, New York